SUN SHIPBUILDING AND DRY DOCK COMPANY, Appellee,

v.

AMERICAN EXPORT ISBRANDTSEN LINES INC., Appellant.

No. 71–2158.

United States Court of Appeals, Third Circuit.

Argued Jan. 16, 1973.

Decided Feb. 1, 1973.

---

Raymond K. Dentworth, Jr., Philadelphia, Pa., for appellant; Leonard S. Leaman, Edwin R. Alley, Lord, Day & Lord, New York City, Drinker, Biddle & Reath, Philadelphia, Pa., of counsel.

John J. Runzer, E. Parry Warner, Philadelphia, Pa., for appellee; Pepper, Hamilton & Scheetz, Philadelphia, Pa., of counsel.

Before KALODNER, ADAMS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Sun Shipbuilding & Dry Dock Company ("Sun") built four cargo vessels for American Export Isbrandtsen Lines, Inc. ("Export") under a construction contract. The Maritime Administration [1] ("MarAd") agreed to subsidize construction of the ships, sharing the construction cost with Export in specified percentages. Export, with MarAd's approval, requested Sun to perform certain changes in the plans and specifications involving the refrigeration of cargo space. Sun completed the changes and all the parties agreed upon the amount of costs incurred, for which Sun was entitled to compensation under the contract. However, a dispute arose between Export and MarAd as to the latter's share of the costs incurred as a result of the changes. Export contended that MarAd was obligated to subsidize changes to the same extent that it subsidized the basic contract work; MarAd contended that it was not so obligated, claiming that its obligation was to subsidize only the amount that the alterations would have cost had they been included in the original construction plans.

Export and MarAd each paid Sun in accordance with its own conception of its obligation, and Sun received $217,200 less than the amount all parties agreed was due it.

Export made its disagreement with MarAd a dispute under the construction contract and submitted the matter for administrative adjudication by the Maritime Subsidy Board. The Board subsequently decided that MarAd was correct, that the obligation for the unpaid amount was Export's and that Export was to satisfy the obligation. However, Export considered the decision of the Subsidy Board incorrect, refused to pay Sun, and sought some means of taking an appeal. Because of its close relationship with Export, Sun refrained from suing Export for the $217,200. Instead, both Sun and Export looked for a means of presenting the issues to a tribunal that could make a binding adjudication of the rights of all three parties. To this end, a meeting was held in March, 1965, attended by representatives of Sun and Export.

At the meeting, which was the subject of a written report, the following was proposed: (1) a suit would be brought in Sun's name against the United States in the Court of Claims for $217,200; (2) a law firm that had previously represented Export would act as counsel for Sun, and Export would pay all fees and expenses of the suit; (3) Export would be bound by the outcome of the suit; and (4) Export would pay to Sun reasonable interest on the $217,200 if the

---

1. The Maritime Administration with the Maritime Subsidy Board has had transferred to it the functions formerly performed by the Federal Maritime Board.

suit in the Court of Claims should be decided in favor of the government.[2]

According to Sun's evidence, an agreement in principle had been reached and suit was filed in the Court of Claims. Subsequent to the filing of the suit, the United States filed a third-party complaint against Export and Export responded by intervening as a party plaintiff. The Court of Claims held that the United States was responsible to Sun in the amount of $217,200, but that Export was liable in turn to the United States for the same amount. Nevertheless, Export contends that it is not liable for the interest, since Sun had prevailed in *its* suit against the government.

Export's position, however, is not congruent with the following factors. First, because of the limitations of its jurisdiction and the procedural posture of the case, the Court of Claims could not enter a judgment against Export in Sun's favor. Second, the Court of Claims did state, in the course of its adjudication, "It is our opinion that Export should be required to pay the difference in the increase in costs due to the change in the work, which has not been paid by MarAd." Third, and perhaps most importantly, the practical effect of the Court of Claims disposition was that the government won the suit and Export was liable for the sums owing. Thereafter, Export paid Sun the $217,200, but refused to pay Sun any interest thereon.

Following Export's refusal to pay the interest, Sun filed suit against Export in the district court, claiming interest on the $217,200. In Count I of its complaint, Sun averred that it was entitled to interest at the legal rate, and in Count II Sun claimed that Export had contracted to pay Sun reasonable interest as defined at the March, 1965 meeting.

The trial court submitted the issues under both counts to the jury, who brought in verdicts in favor of Sun on each Count, in the respective amounts of $65,160 and $47,579.55. The district court entered judgment only on the verdict under Count II, in conformity with the view expressed by Sun that Export had contracted at the March, 1965 meeting to pay reasonable interest.

We hold that the trial court did not err in submitting the issue to the jury, and that there was adequate evidence to support the verdict of the jury as to Count II.

Export also contends that the trial judge made a number of errors in the course of its charge. We have carefully reviewed the various contentions of Export in this respect and find them to be without merit.

Accordingly, the judgment of the district court, based on the verdict of the jury in regard to Count II, will be affirmed.

---

2. The letter memorializing this agreement contained the following two statements dealing with this subject:

"   .   .   .   AEIL [Export] would enter into an agreement with Sun that it would be bound by the decision of the Court of Claims; viz., if the decision of the Court of Claims were in favor of the Government, that AEIL [Export] would pay the money now owing to Sun plus interest.

"   .   .   .   The question arises as to what interest would be paid to Sun by AEIL [Export] if the suit in the Court of Claims should be decided in the favor of the Government. This question includes the subsidiary questions of what the rate of interest would be and the date from which interest would run. Mr. Atkinson said that he would leave it to the management of AEIL [Export] to offer a reasonable suggestion in this respect."